IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | | |
|---|---|---|
| EMSL ANALYTICAL, INC., | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | |
| | : | **NO. 05-CV-** |
| TESTAMERICA ANALYTICAL TESTING | : | |
| CORPORATION; TESTAMERICA | : | |
| ENVIRONMENTAL SERVICES, LLC; | : | |
| TESTAMERICA ENVIRONMENTAL | : | |
| MICROBIOLOGY LABORATORY, INC.; | : | |
| ENVIRONMENTAL MICROBIOLOGY | : | |
| LABORATORY, INC.; ENVIRONMENTAL | : | |
| MICROBIOLOGY LABORATORIES, INC. | : | |
| | : | |
| **Defendants** | : | |

## COMPLAINT

Plaintiff, EMSL Analytical, Inc. ("EMSL"), by its undersigned counsel, alleges for its complaint against defendants, TestAmerica Analytical Testing Corporation, TestAmerica Environmental Services, LLC, TestAmerica Environmental Microbiology Laboratory, Inc., Environmental Microbiology Laboratory, Inc., and Environmental Microbiology Laboratories, Inc. (collectively, "Defendants"), as follows:

## THE PARTIES

1.     EMSL is a corporation with its principal place of business at 107 Haddon Avenue, Westmont, New Jersey 08108. EMSL is, and since at least as early as 1981, has been one of the leading environmental testing service firms in the country providing to its customers analytical testing for the presence of, among other materials, asbestos, environmental chemistry, lead, mold, bacteria, allergens, indoor air quality and other toxins.

624139_1

2.     Upon information and belief, Defendant TestAmerica Analytical Testing Corporation ("TestAmerica") is a corporation with its principal place of business at 122 Lyman Street, Asheville, North Carolina 28801. Upon information and belief, TestAmerica is engaged in the business of providing analytical laboratory, air emissions, and indoor air quality testing services. Upon information and belief, TestAmerica is found and/or transacts business within the District of New Jersey.

3.     Upon information and belief, Defendant TestAmerica Environmental Services, LLC ("TESL") is a corporation with its principal place of business at 122 Lyman Street, Asheville, North Carolina 28801. Upon information and belief, TESL is engaged in the business of operating analytical testing laboratories. Upon information and belief, TESL is a subsidiary of TestAmerica, and is found and/or transacts business within the District of New Jersey.

4.     Upon information and belief, Defendant TestAmerica Environmental Microbiology Laboratory, Inc. ("TEML"), is a California Corporation, having a place of business at 1150 Bayhill Drive, Suite 100, San Bruno, California 94066. Upon information and belief, TEML is engaged in the business of providing analysis of air and surface samples for fungi and bacteria, namely, culturable air samples, spore trap samples, tape, bulk, swab and water samples; E. coliand *Legionella* analysis; allergen analysis and testing for dust mite, cockroach, cat, dog, rat, mouse, allergens, and asbestos. Upon information and belief, TEML is found and/or transacts business within the District of New Jersey.

5.     Upon information and belief, Defendant Environmental Microbiology Laboratory, Inc. ("EML") is a California Corporation, having a place of business at 1150 Bayhill Drive, Suite 100, San Bruno, California 94066. Upon information and belief, EML is engaged in

the business of providing analysis of air and surface samples for fungi and bacteria, namely, culturable air samples, spore trap samples, tape, bulk, swab and water samples; E. coli and *Legionella* analysis; allergen analysis and testing for dust mite, cockroach, cat, dog, rat, mouse, allergens, and asbestos.  Upon information and belief, EML is found and/or transacts business within the District of New Jersey.

6.    Upon information and belief, Defendant Environmental Microbiology Laboratories, Inc. ("EMLS") is a California Corporation, having a place of business at 1150 Bayhill Drive, Suite 100, San Bruno, California 94066.  Upon information and belief, EMLS is engaged in the business of providing analysis of air and surface samples for fungi and bacteria, namely, culturable air samples, spore trap samples, tape, bulk, swab and water samples; E. coli and *Legionella* analysis; allergen analysis and testing for dust mite, cockroach, cat, dog, rat, mouse, allergens, and asbestos.  Upon information and belief, EMLS is found and/or transacts business within the District of New Jersey.

7.    Upon information and belief, Defendants are corporations under common control and act individually and/or collectively with respect to the actions and allegations set forth herein.

## JURISDICTION AND VENUE

8.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1338, and 1367, as this action arises under the Lanham Trademark Act, 15 U.S.C. § 1051 *et seq.*, and common law trademark infringement, unfair competition and the New Jersey Anti-Dilution statute.

9.    Venue is properly laid in this jurisdiction pursuant to the 28 U.S.C. §§ 1391(b) and/or 1391(c) in that, upon information and belief, the Defendants regularly conduct business in this District, and/or are subject to personal jurisdiction in this District.

624139_1                                    -3-

## BACKGROUND

### Plaintiff's Longstanding Presence in the Analytical and Laboratory Testing Industry

10.     EMSL was established in 1981 and, since that time, has grown to be one of the country's largest laboratories devoted to analytical and laboratory testing services including, but not limited to, indoor air quality and related environmental laboratory testing services.

11.     Over the past 24 years, the company has built a national network of 25 testing laboratories and one service center.  A copy of a map indicating the locations of Plaintiff EMSL's laboratories is attached hereto as Exhibit A.

12.     In connection with its services, EMSL has adopted and has long used the names and marks EMSL, EMSL and diamond design, EMSL ANALYTICAL, as well as related names and marks including, but not limited to, the mark depicted in the EMSL Registration, defined below (collectively the "EMSL Marks").

13.     EMSL is also the owner of incontestable United States Service Mark Registration No. 2,199,503, for the mark "EMSL", in design form (the "EMSL Registration"). EMSL's Registration is registered in International Class 42 in connection with "providing environmental and material analysis and electron microscopy analysis."  EMSL's Registration was issued by the United States Patent and Trademark Office (the "USPTO") on October 27, 1998, and has been granted incontestable status.  A copy of EMSL's Registration is attached hereto as Exhibit B.

14.     EMSL's Registration for the EMSL and Design mark is in good standing, is valid, subsisting and incontestable, and is conclusive evidence of EMSL's exclusive right to use the EMSL mark in connection with the services specified in the Registration.

624139_1                                          -4-

15.     Since 1981, EMSL has used the EMSL Marks in connection with its analytical and laboratory testing services including, but not limited to, the services enumerated in EMSL's Registration.

16.     EMSL is and has been for many years engaged in extensive advertising and sale of a wide variety of its analytical and laboratory testing services. In connection therewith, and since at least as early as 1981, EMSL has continuously used in interstate commerce the EMSL Marks in connection with analytical and laboratory testing services.

17.     In addition, EMSL has garnered substantial, nationwide common law rights in the EMSL Marks by virtue of its extensive use of the EMSL name and mark, and related names and marks, in connection with its services.

18.     More specifically, EMSL has used its EMSL Marks, in commerce in connection with its services, including, but not limited to, environmental analytical testing services of air, water and surface samples for asbestos, lead and other toxins, mold, fungi, bacteria, and allergens, as well as testing services including electron microscopy, indoor air quality, environmental chemistry, materials identification, failure analysis, and related research and development services.

19.     EMSL's services under the EMSL Marks, have been extensively and continuously offered to the general public, and particularly to commercial, industrial, regulatory and law enforcement concerns in need of environmental analytical testing services, analytical testing of air, water and surface samples for asbestos, lead and other toxins, mold, fungi, bacteria, and allergens, as well as testing services including electron microscopy, indoor air quality, environmental chemistry, materials identification, failure analysis, characterization and forensic laboratory services, and related research and development services.  EMSL has also

extensively advertised its services under the EMSL Marks throughout the United States and to such business concerns.

20.     By reason of such advertising, including promotion in industry-wide publications and at trade shows since the founding of EMSL, as well as though its extensive provision of EMSL's services in connection with EMSL's Marks, the public has come to recognize the EMSL Marks, as signifying EMSL and its services.  In this regard, EMSL has built up extensive goodwill in connection with the sale and advertising of its services under the EMSL Marks.

### Plaintiff's Services

21.     At least as early as 1981, EMSL was primarily engaged in the testing and analysis of materials characterization and asbestos, particularly utilizing electron microscopy techniques.

22.     In addition to asbestos testing and analysis, at least as early as 1987, EMSL was well established in providing a full range of environmental chemistry services related to the testing and analysis of drinking water, wastewater, groundwater, air, soil, paint, hazardous wastes and other toxins; and indoor air quality services including, but not limited to, the testing of silica.

23.     By at least as early as 1998, EMSL had expanded its services into the related field of testing for other indoor environmental contaminants such as molds.

24.     By at least as early as 2000, EMSL had further expanded its services to include microbiological services including testing of fungi and bacteria by culture techniques.

25.     By at least as early as 2002, EMSL had added indoor allergen testing of endotoxins, mycotoxins, MVOC's, and bacterial speciation using gas chromatography to its services.

26.   By at least as early as 2003, EMSL had expanded its services to include testing for EPA TO-15, Organic Industrial Hygiene, and Real Time Q-PCR.

27.   By at least as early as 2004, EMSL had further expanded its services to include methamphetamine/clandestine drug testing.  EMSL currently offers testing for, *inter alia*, asbestos, mold, bacteria, endotoxins, mycotoxins, MVOC's, allergens, industrial hygiene, lead, materials characterization, silica and environmental chemistry.

28.   Although EMSL is regarded as a well established and reliable source of a wide array of analytical and laboratory testing services, at least fifty percent of EMSL's current revenue is generated from asbestos testing and related services.

<u>**Plaintiff's Laboratories**</u>

29.   In 1981, EMSL established its first laboratory in Camden, New Jersey.

30.   In 1988, EMSL opened laboratories in Atlanta, Georgia and Piscataway, New Jersey.

31.   In 1989, EMSL opened laboratories in the San Francisco area, which is now located in Milpitas, California, and Ann Arbor, Michigan.

32.   In 1993, EMSL opened laboratories in Carle Place, New York, and New York, New York.

33.   In 1995, EMSL opened laboratories in Houston, Texas and Greensboro, North Carolina.

34.   In 1998, EMSL opened a laboratory in Los Angeles, California (now doing business as "LA TESTING").

35.   In 2000, EMSL opened a new laboratory in Libby, Montana.

36.   By at least as early as 2001, EMSL had established a corporate office and laboratory in Westmont, New Jersey, as well as additional laboratories in Miami Florida,

Orlando, Florida, Chicago, Illinois, Indianapolis, Indiana, Baton Rouge, Louisiana, Beltsville, Maryland, Minneapolis, Minnesota, Buffalo, New York, Elmsford, New York, Charlotte, North Carolina, and Dallas, Texas.

37.     In 2002, EMSL opened a new laboratory in San Antonio, Texas.

38.     In 2004, EMSL opened new laboratories in Raleigh, North Carolina and Plymouth Meeting, Pennsylvania.

39.     In 2005, EMSL has opened new laboratories in Los Alamitos, California (now doing business as "LA TESTING"), Wallingford, Connecticut, Boston, Massachusetts, and St. Louis, Missouri.

40.     Although many customers prefer to work with EMSL laboratories located in the customer's geographic region, customers need not be located near one of EMSL's laboratories in order to avail themselves of EMSL's services.   Customers from around the country regularly send specimens to EMSL laboratories for testing.

### Defendants' Infringing Marks

41.     Upon information and belief, Defendants also purport to offer laboratory testing and analysis services.

42.     Notwithstanding Plaintiff's longstanding prior rights in its EMSL Marks, and upon information and belief, some or all of Defendants, and particularly Defendant EMLS, on or about March 6, 1989, began using the mark ENVIRONMENTAL MICROBIOLOGY LABORATORY in connection with certain laboratory testing and analysis services.

43.     Upon information and belief, in or about January of 2001, some or all of Defendants and particularly Defendant EML, began using a design form of the mark "EMLab" in connection with air sampling units and certain laboratory testing and analysis services.

44.     Upon information and belief, in or about 2002, some or all of Defendants, and particularly Defendant TEML, began using the mark "EMLab" in connection with certain laboratory analysis services.

45.     Upon information and belief, in or about January of 2002, some or all of Defendants, and particularly Defendant EML, began using a design form of the mark "EMLAB ENVIRONMENTAL MICROBIOLOGY, INC." in connection with certain laboratory testing and analysis services.

46.     Upon information and belief, consumers have adopted and have been referring, and often refer, to Defendants as "EML" and/or "EMLab".

47.     Upon information and belief, in or about May of 1999, some or all of Defendants offered the following services: fungi samples, bacteria samples, spore traps, bulk, swap, and tape, environmental surface cultures, environmental water cultures, and dust, fungi, and bacterial screening.

48.     Upon information and belief, some or all of Defendants offered the following services in or about November of 2001: air sampling for bacteria, surface sampling for fungi and bacteria, allergen testing, food microbiology, digital microphoto, and pH testing.

49.     Upon information and belief, some or all of Defendants expanded their services in or about 2004 to include materials testing and indoor allergen testing.

50.     Upon information and belief, Defendants began offering asbestos testing and analysis services in or about June of 2005.

51.     Upon information and belief, Defendants currently offer at least the following services: asbestos testing, materials testing, air and surface sampling, allergen testing, food microbiology, digital microphoto, PLM bulk, PCM airborne fiber counts, and pH testing.

**Defendants' Trademark/Service Mark Applications**

52.     Notwithstanding Plaintiff's longstanding prior rights in its EMSL Marks, and upon information and belief, Defendant TEML filed and is the applicant with respect to United States Service Mark Application Serial No. 78/457,437.  This application was filed on July 27, 2004, for the federal registration of the mark "EMLab", and is now pending before the USPTO.  In its application, TEML alleges to have first used the EMLab mark in connection with the analysis of air and surface samples for fungi and bacteria, namely, culturable air samples, spore trap samples, tape, bulk, swab and water samples; E. coli and *Legionella* analysis; allergen analysis and testing for dust mite, cockroach, cat, dog, rat, and mouse allergens on February 1, 2002.  EMSL has opposed the federal registration of the EMLab mark by filing a Notice of Opposition with the Trademark Trial and Appeal Board of the USPTO.

53.     In addition, and upon information and belief, Defendant EML is the applicant with respect to United States Trademark and Service Mark Application Serial No. 78/721,307, which was filed on September 27, 2005, for the federal registration of the mark "EMLAB" and Design, and is now pending before the USPTO.  In its application, EML alleges to have first used the mark EMLAB and Design in connection with air sampling units for collecting mold, fungal spores and other airborne particulates for the purpose of analysis, as well as in connection with the testing and analysis of air and surface samples for fungi and bacteria, namely, culturable air samples, spore trap samples, tape bulk, swab, and water samples, E. coli and *Legionella* analysis, animal dander, dust mites, and rodents in January of 2001.

54.     In addition, and upon information and belief, Defendant EML is the applicant with respect to United States Service Mark Application Serial No. 78/721,310, which was filed on September 27, 2005, for the federal registration of the mark "EMLAB ENVIRONMENTAL MICROBIOLOGY LABORATORY, INC." and Design, and is now

pending before the USPTO.   In its application, EML alleges to have first used the mark "EMLAB ENVIRONMENTAL MICROBIOLOGY LABORATORY, INC." and Design in connection with the testing and analysis of air and surface samples for fungi and bacteria, namely, culturable air samples, spore trap samples, tape bulk, swab, and water samples, E. coli and *Legionella* analysis, animal dander, dust mites, and rodents in January of 2002.

     55.    In addition, and upon information and belief, Defendant EMLS is the applicant with respect to United States Service Mark Application Serial No. 78/520,765, which was filed on November 22, 2004, for the federal registration of the mark "ENVIRONMENTAL MICROBIOLOGY LABORATORY", and is now pending before the USPTO.   In its application, EMLS alleges to have first used the mark ENVIRONMENTAL MICROBIOLOGY LABORATORY in connection with testing and analysis of air and surface samples for fungi and bacteria, namely, culturable air samples, spore trap samples, tape bulk, swab, and water samples, E. coli and *Legionella* analysis, animal dander, dust mites, and rodents, on March 6, 1989.

     56.    Upon information and belief, Defendants have sold and/or offered for sale their laboratory testing and analytical services, including, but not limited to, testing and analysis of asbestos, in commerce regulated by Congress, as well as the State of New Jersey.

     57.    Certain of Plaintiff EMSL's laboratory and analytical testing services are identical, or nearly identical, to Defendants' laboratory and analytical testing services.   In particular, both Plaintiff and Defendants compete for the same class of consumers in the laboratory testing and analytical services field.   At the very least, Plaintiff EMSL's and Defendants' laboratory testing and analytical services associated with their respective marks are the sort which consumers would assume, and have assumed, a commonality of source, affiliation, or sponsorship if sold or offered in connection with the same or similar marks.

## Defendants' Laboratories

58.     Upon information and belief, Defendants opened their first indoor air quality testing laboratory near San Francisco in 1993.

59.     Upon information and belief, on or about 2002, Defendants had only two laboratories: one in San Diego, California and another in San Bruno, California.

60.     Upon information and belief, on or about 2002, Defendants began opening new laboratories, in locations having close geographic proximity to those locations where EMSL had already established laboratories.

61.     Upon information and belief, between about July of 2003 and October of 2003, Defendants opened three new laboratories in Glendale, California, Davie, Florida, and Bensalem, Pennsylvania.

62.     Upon information and belief, between about November of 2003 and October of 2004, Defendants had opened new laboratories in the following locations: Phoenix, Arizona, Inland Empire, California, Irvine, California, Long Beach, California, Sacramento, California, San Jose, California, West Los Angeles, California, Denver, Colorado, Fort Lauderdale, Florida, Atlanta, Georgia, Honolulu, Hawaii, Chicago, Illinois, Boston, Massachusetts, Las Vegas, Nevada, Fort Worth, Texas, and Bellevue, Washington.

63.     On or about January 15, 2004, Defendants EML and TESL announced, that they had "joined forces," and that EML would be able "to provide a broader range of services and more locations."

64.     Upon information and belief, on or after November of 2004, Defendants opened another four laboratories in the following locations: Tampa, Florida, Union, New Jersey, Cincinnati, Ohio, and Fairfax, Virginia.

65.     A copy of a map from the website www.emlab.com indicating the locations of the Defendants' laboratories is attached hereto as Exhibit C.

## Instances of Actual Confusion

66.     Consumers have been confusing and continue to confuse Plaintiff's EMSL Marks with Defendants' EML, EMLab, and ENVIRONMENTAL TESTING LABORATORY marks.

67.     Consumers have assumed that EMSL's company and Defendants' company or companies are the same entity and/or have otherwise confused one entity for the other.

68.     As a result of this confusion, consumers have sent requests for testing, testing samples, reports and other correspondence intended for one party to the other.

69.     For example, upon information and belief, between about August and September of 2005, Defendant EML, through its "Cincinnati MicroLab," conducted a promotion wherein it issued "New Client Lab Certificates" offering "up to five (5) free standard Spore Trap analyses" to new customers.

70.     EMSL received inquiries and/or other communications from customers and/or existing customers who erroneously believed, or otherwise were confused, that the "New Client Lab Certificates" were issued by EMSL.

71.     Between about July and August of 2005, EMSL advertised an "IAQ and Industrial Hygiene Workshop" which EMSL was to host on August 11, 2005. The advertisement prominently displayed the EMSL Analytical, Inc. mark, as well as the EMSL diamond design mark.

72.     EMSL is aware of a workshop registrant who attempted to register for EMSL's workshop by contacting Defendants rather than EMSL.

73.     Upon information and belief, Defendants opened a new laboratory under the EMLab name in Tampa, Florida on or about March of 2005.

74.     As of March, 2005, EMSL did not have a laboratory operating under the EMSL Marks in Tampa, Florida.

75.     Coinciding with the opening of Defendants' Tampa, Florida laboratory, EMSL received several inquiries about an EMSL laboratory opening in Tampa, Florida.

76.     Upon information and belief, the American Indoor Air Quality Council of Glendale, Arizona ("AmIAQ") is a private, non-profit association which collects and disseminates indoor air quality information to its members.

77.     Upon information and belief, members of the AmIAQ comprise individuals and corporations, some of which are customers and prospective customers of both EMSL and Defendants.

78.     Upon information and belief, Defendants published a newsletter entitled the *Environmental Reporter* which is circulated to Defendants' customers and prospective customers.

79.     Upon information and belief, two articles were published in the September, 2004 issue of Defendants' *Environmental Reporter* entitled *Source Sampling: When, Where & Why*, by Dr. Harriet Burge, and *Fungi of the Month: Chaetomium Species* by Subrananian Thiagarajan (collectively "Defendants' Articles").

80.     Upon information and belief, both of Defendant's Articles were reprinted, either in whole or in part in the September/October 2004 edition of AmIAQ's newsletter entitled *IAQ Council,* with each article bearing the following notation:

> Reprinted with Permission from EMSL's September 2004 *Environmental Reporter*

81.     EMSL did not grant permission to the AmIAQ, or anyone else, to reprint Defendants' Articles in the IAQ Council newsletter, or any other publication.

### Laboratory Accreditation

82.     The American Industrial Hygiene Association ("AIHA") is a voluntary professional association of firms engaged in the business of industrial hygiene and occupational and environmental health and safety.   The AIHA promotes and provides to its members laboratory accreditation, continuing education, employment services and awards for extraordinary achievements in the field of industrial hygiene.  The AIHA accreditation program is provided as a service to its members, by which AIHA enables consumers to identify those testing laboratories that meet a specified minimum level of competence.  A laboratory which meets the AIHA's minimum standards is permitted to be identified as an "AIHA Accredited Laboratory."   AIHA members may use appropriate forms of the AIHA's certification marks (examples of which are attached hereto as Exhibit D) only in connection with accredited services provided by those laboratories providing that service.  For example, a laboratory may be an "AIHA Environmental Microbiology Accredited Laboratory" or an "AIHA Industrial Hygiene Accredited Laboratory."

83.     AIHA laboratory accreditation signifies that a particular laboratory has met certain minimum standards established by the AIHA, and is a pertinent factor relied upon by many consumers when seeking reliable laboratory test results and related analytical services.

84.     EMSL has been an accredited member in good standing of the AIHA since 1989.

85.     All, or nearly all, of EMSL's laboratories carry one or more AIHA accreditations.

86.     The National Institute of Standards and Technology ("NIST") also administers an accreditation program available to laboratories known as the National Voluntary Laboratory Accreditation Program ("NVLAP"). NVLAP is comprised of a series of laboratory accreditation programs (LAPs) which are established on the basis of requests and demonstrated need. Each LAP includes specific calibration and/or test standards and related methods and protocols assembled to satisfy the unique needs for accreditation in a field of testing or calibration. NVLAP accredits public and private laboratories based on evaluation of their technical qualifications and competence to carry out specific calibrations or tests.

87.     NVLAP provides an unbiased third-party evaluation and recognition of performance, as well as expert technical guidance to upgrade laboratory performance. NVLAP accreditation signifies that a laboratory has demonstrated that it operates in accordance with NVLAP management and technical requirements pertaining to quality systems; personnel; accommodation and environment; test and calibration methods; equipment; measurement traceability; sampling; handling of test and calibration items; and test and calibration reports. NVLAP accreditation does not imply any guarantee (certification) of laboratory performance or test/calibration data; it is solely a finding of laboratory competence. An accredited laboratory may cite its accredited status and use the NVLAP logo on reports, stationery, and in business and trade publications provided that this use does not imply product certification.

88.     NVLAP laboratory accreditation signifies that a particular laboratory has met certain minimum standards established by the NVLAP, and is a pertinent factor relied upon by many consumers when seeking reliable laboratory test results and related analytical services.

89.     All, or nearly all, of EMSL's laboratories carry one or more NVLAP accreditations.

90. Many states require various laboratory accreditations.

91. State laboratory accreditation signifies that a particular laboratory has met certain minimum standards established by that state, and is a pertinent factor relied upon by many consumers when seeking to obtain laboratory test results and related analytical services in compliance with state regulatory programs.

92. Nearly all, of EMSL's laboratories carry one or more State accreditations.

93. Each of EMSL's laboratories carry one or more AIHA, NVLAP, and/or state accreditations for one or more of the services provided by that laboratory.

94. The specific services provided by each EMSL laboratory, as well as the accredited services provided by that laboratory (e.g., "Environmental Microbiology," "Industrial Hygiene," "Environmental Lead," etc.) are provided on EMSL's website at www.emsl.com., which website is incorporated herein by reference. In addition, copies of many of the certificates of accreditation issued by each accreditation authority to each EMSL laboratory are also available on EMSL's website.

95. According to Defendants' website (www.emlab.com), Defendants' Glendale, California, Irvine, California, Long Beach, California, San Bruno, California, San Diego, California, San Jose, California, Denver, Colorado, Fort Lauderdale, Florida, Atlanta, Georgia, Chicago, Illinois, Philadelphia, Pennsylvania, Fort Worth, Texas, Seattle, Washington are AIHA Environmental Microbiology Accredited Laboratories.

96. Upon information and belief, customers seeking laboratory testing and analysis services often seek such services from accredited laboratories in the customer's local geographic area.

97.    Upon information and belief, many such customers prefer to have such services rendered by accredited laboratories in the customer's local geographic area.

98.    Upon information and belief, Defendants' accept orders from customers for accredited laboratory services through any of its laboratories, whether or not each such laboratory is accredited.

99.    Upon information and belief, when Defendants' receive a customer order for accredited laboratory services through a non-accredited laboratory, Defendants' send such order to one of Defendants' accredited laboratories.

100.   Upon information and belief, Defendants accept such customer orders without informing the customer at the time of taking the order that the customer's order will be processed at a laboratory located in a different geographic location.

101.   Upon information and belief, Defendants process all or a portion of such customer orders for the provision of the services requested by the customer through Defendants' non-local laboratory.

102.   Upon information and belief, Defendants' practices have led, lead and/or may in the future continue to lead customers to falsely believe that Defendants' services are accredited services provided through Defendants' local laboratories.

103.   Upon information and belief, as it expanded its operations, Defendants actively sought to mislead the consumers of its services into believing that all of its branch laboratories were accredited by AIHA and/or other accreditation sources.

104.   Upon information and belief, Defendants have engaged in the foregoing conduct in an attempt to injure and/or unlawfully benefit from Plaintiff EMSL's good-will and business reputation.

## COUNT I
## FEDERAL TRADEMARK INFRINGEMENT

105.   Plaintiff incorporates by reference paragraphs 1 through 104 above as set forth fully herein.

106.   Plaintiff's EMSL and Design mark is a valid and protectable mark registered on the Principal Register of the United States Patent and Trademark Office under incontestable United States Service Mark Registration No. 2,199,503.

107.   Plaintiff used its EMSL and Design mark in commerce prior to Defendants' first use of the marks "EML," "EMLab," "ENVIRONMENTAL MICROBIOLOGY LABORATORY," "EMLAB ENVIRONMENTAL MICROBIOLOGY LABORATORY," "ENVIRONMENTAL MICROBIOLOGY LABORATORIES" and related marks in connection with its services.

108.   Through extensive efforts by Plaintiff, its EMSL and Design mark has come to have significance in the mind of the relevant trade and purchasing public as an indicator of services originating with, sponsored by, or otherwise associated with Plaintiff.

109.   Upon information and belief, Defendants have used the marks "EML", "EMLab", "ENVIRONMENTAL MICROBIOLOGY LABORATORY", "EMLAB ENVIRONMENTAL MICROBIOLOGY LABORATORY", "ENVIRONMENTAL MICROBIOLOGY LABORATORIES" and related marks in interstate commerce.

110.   Through extensive efforts by Plaintiff, the EMSL Marks have come to have significance in the mind of the relevant trade and purchasing public as indicators of services originating with, sponsored by, or otherwise associated with Plaintiff.

111.   Defendants' services are in direct competition with Plaintiff's services.

112.    Defendants' services are offered and/or rendered to the same or similar class of consumers and/or purchasing public as are Plaintiff's services.

113.    Defendants' services are offered and/or delivered through the same or similar channels of trade as are Plaintiff's services.

114.    Plaintiff has never authorized or consented to Defendants' activities, alleged herein.

115.    Because Defendants have adopted and used in commerce virtually identical marks used first in the market by Plaintiff, customers and potential customers are likely to be, and indeed already have been, confused, mistaken and/or deceived in error that the services offered by Defendants are the services offered by Plaintiff.

116.    Defendants are liable to Plaintiff for trademark infringement under Sections 32, 34, and 35 of the Federal Lanham Trademark Act of 1946, as amended, 15 U.S.C. §§ 1114, 1116, and 1117.

117.    Plaintiff has no adequate remedy at law.  The conduct of Defendants has caused and, if not enjoined, will continue to cause irreparable damage to the rights of Plaintiff, its EMSL and Design mark, and in its business, reputation, and goodwill.

**COUNT II**
**FEDERAL UNFAIR COMPETITION**

118.    Plaintiff incorporates by reference paragraphs 1 through 117 above as set forth fully herein.

119.    Plaintiff's EMSL Marks are valid and protectable marks.

120.    Plaintiff used its EMSL Marks in commerce prior to Defendants' first use of the marks "EML", "EMLab", "ENVIRONMENTAL MICROBIOLOGY LABORATORY", "EMLAB      ENVIRONMENTAL      MICROBIOLOGY      LABORATORY",      or

"ENVIRONMENTAL MICROBIOLOGY LABORATORIES" and related marks in connection with its services.

121.    Through extensive efforts by Plaintiff, the EMSL Marks have come to have significance in the mind of the relevant trade and purchasing public as indicators of services originating with, sponsored by, or otherwise associated with Plaintiff.

122.    Defendants' services are in direct competition with Plaintiff's services.

123.    Defendants' services are offered and/or rendered to the same or similar class of consumers and/or purchasing public as are Plaintiff's services.

124.    Defendants' services are offered and/or delivered through the same or similar channels of trade as are Plaintiff's services.

125.    Plaintiff has never authorized or consented to Defendants' activities, alleged herein.

126.    Because Defendant has adopted and used in commerce virtually identical marks used first in the market by Plaintiff, customers and potential customers are likely to believe, and indeed have already believed, in error that services offered by Defendants are the services offered by Plaintiff.

127.    Upon information and belief, Defendants have represented, advertised and/or otherwise misled the consuming public in commercial advertising that specific laboratories are accredited by the American Industrial Hygiene Association ("AIHA") where those laboratories were in fact not accredited and/or were not in compliance with the accreditation policies of the AIHA.

128.    The actions of Defendants alleged herein are likely to confuse, cause mistake, mislead and/or deceive the relevant public as to the origin, sponsorship or approval of

Defendants' services, or commercial activities, and/or that Plaintiff and Defendants are affiliated, connected to, or associated with each other in violation of Section 43(a)(1)(A) of the Lanham Trademark Act of 1946, as amended, 15 U.S.C. § 1125(a)(1)(A).

129.    The actions of Defendants alleged herein constitute the use of a false or misleading description of fact, and/or a false or misleading representation of fact in commercial advertising or promotion, misrepresenting the nature, characteristics, and/or qualities, or geographic origin of its services and/or commercial activities in violation of Section 43(a)(1)(B) of the Lanham Trademark Act of 1946, as amended, 15 U.S.C. § 1125(a)(1)(B).

130.    The conduct of Defendants has caused substantial and irreparable injury to the rights of Plaintiff and its EMSL Marks, as well as to its business, reputation, and goodwill.

131.    Plaintiff has no adequate remedy at law.  Plaintiff will continue to suffer damages as a result of Defendants' actions, unless Defendants are enjoined and restrained.

### COUNT III
### STATE AND COMMON LAW TRADEMARK INFRINGEMENT

132.    Plaintiff incorporates by reference paragraphs 1 through 131 above as set forth fully herein.

133.    Plaintiff's EMSL Marks are valid and protectable marks.

134.    Plaintiff used its EMSL Marks in commerce prior to Defendants' first use of "EML", "EMLab", "ENVIRONMENTAL MICROBIOLOGY LABORATORY", "EMLAB ENVIRONMENTAL MICROBIOLOGY LABORATORY", or "ENVIRONMENTAL MICROBIOLOGY LABORATORIES" or related marks in connection with its services.

135.    Plaintiff is a well-established New Jersey corporation which provides analysis and laboratory testing services, including, but not limited to, testing for allergens, asbestos, lead, and other toxic materials, mold, bacteria, environmental chemistry, silica,

endotoxin, mycotoxin, EPA TO-15 and industrial hygiene in interstate commerce using its EMSL Marks.

136.    Through extensive efforts by Plaintiff, its EMSL Marks have come to have significance in the mind of the relevant trade and purchasing public as indicators of services originating with, sponsored by, or otherwise associated with Plaintiff.

137.    Defendants' services are in direct competition with Plaintiff's services.

138.    Defendants' services are offered and/or rendered to the same or similar class of consumers and/or purchasing public as are Plaintiff's services.

139.    Defendants' services are offered and/or delivered through the same or similar channels of trade as are Plaintiff's services.

140.    Despite Plaintiff's prior trademark rights, Defendants have adopted and used highly similar, if not virtually identical marks, which were used first in the market by Plaintiff.  This use is likely to, and already has, caused considerable confusion, mistake, and/or deception as to the origin of services offered by Plaintiff.

141.    Defendants' acts of infringement of the EMSL Marks have been committed within the jurisdiction of this Court and have been committed in other jurisdictions throughout the United States.

142.    The actions of Defendants alleged herein constitute state and common law infringement of Plaintiff's EMSL Marks.

143.    The actions of Defendants alleged herein constitute infringement of Plaintiff's EMSL Marks under N.J.S.A. §56:4-1.

144.   Plaintiff has no adequate remedy at law.  The actions of Defendants have caused, and will continue to cause, substantial and irreparable injury to Plaintiff's business reputation and goodwill unless enjoined by this Court.

## COUNT IV
## STATE AND COMMON LAW UNFAIR COMPETITION

145.   Plaintiff incorporates by reference paragraphs 1 through 144 above as set forth fully herein.

146.   Plaintiff's EMSL Marks are valid and protectable marks.

147.   Plaintiff used its EMSL Marks in interstate commerce prior to Defendants' first use of the "EML," "EMLab," "ENVIRONMENTAL MICROBIOLOGY LABORATORY," "EMLAB ENVIRONMENTAL MICROBIOLOGY LABORATORY," "ENVIRONMENTAL MICROBIOLOGY LABORATORIES" and related marks in connection with its services.

148.   Through extensive efforts by Plaintiff, the EMSL Marks have come to have significance in the mind of the relevant trade and purchasing public as indicators of services originating with, sponsored by, or otherwise associated with Plaintiff.

149.   Defendants' services are in direct competition with Plaintiff's services.

150.   Defendants' services are offered and/or rendered to the same or similar class of consumers and/or purchasing public as are Plaintiff's services.

151.   Defendants' services are offered and/or delivered through the same or similar channels of trade as are Plaintiff's services.

152.   Because Defendant has adopted virtually identical marks used first in the market by Plaintiff, customers and potential customers are likely to believe, and indeed have already believed, in error that services offered by Defendants are the services offered by Plaintiff.

153.   Upon information and belief, Defendants have represented, advertised and/or otherwise or misled the consuming public in commercial advertising that specific laboratories are accredited by the American Industrial Hygiene Association ("AIHA") where those laboratories were in fact not accredited and/or were not in compliance with accreditation policies of the AIHA.

154.   The actions of Defendants alleged herein, which were committed with the intent to deceive the public, are likely to confuse, mislead and/or deceive the relevant public as to the origin, sponsorship or approval of Defendants' services or commercial activities, and/or that Plaintiff and Defendants are affiliated, connected to, or associated with each other, in violation of N.J.S.A. § 56:4-1.

155.   The actions of Defendants alleged herein constitute the willful use of a false and misleading description or misrepresentation of fact as to the nature, characteristic, and quality of its services with the intent to deceive the public in violation of N.J.S.A. § 56:4-1.

156.   The conduct of Defendants has caused substantial and irreparable injury to the rights of Plaintiff and its EMSL Marks and to its business, reputation, and goodwill.

157.   Plaintiff has no adequate remedy at law.  Plaintiff will continue to suffer damages as a result of Defendants' actions, unless Defendants are enjoined and restrained.

### COUNT V
### STATE TRADEMARK DILUTION

158.   Plaintiff incorporates by reference paragraphs 1 through 157 above as set forth fully herein.

159.   Plaintiff's EMSL Marks are valid and protectable marks.

160.   Plaintiff used its EMSL Marks in interstate commerce prior to Defendants' first use of the "EMLab" "EML" marks in connection with its services.

161.   Through extensive efforts by Plaintiff, the EMSL Marks have come to have significance and are famous, at least within the State of New Jersey, in the mind of the relevant trade and purchasing public as indicators of services originating with, sponsored by, or otherwise associated with Plaintiff.

162.   Defendants' services are in direct competition with Plaintiff's services.

163.   Because Defendants have willfully adopted virtually identical marks used first in the market by Plaintiff, customers and potential customers are likely to believe, and indeed have already believed, in error that services offered by Defendants are the services offered by Plaintiff.

164.   The actions of Defendants alleged herein constitute a violation of the New Jersey Anti-Dilution statute, N.J.S.A. § 56:3-13.20.

165.   The conduct of Defendants has caused substantial and irreparable injury to the rights of Plaintiff and its EMSL Marks and to its business, reputation, and goodwill.

166.   Plaintiff has no adequate remedy at law.  Plaintiff has suffered, and will continue to suffer, damages as a result of the dilution of its valuable service marks, unless Defendants' actions are enjoined and restrained.

**WHEREFORE**, Plaintiff respectfully demands that this Court enter judgment in its favor and against Defendants and enter an Order:

A.   Preliminarily until final judgment, and permanently thereafter, enjoining Defendants, their officers, agents, servants, employees, attorneys, subsidiaries, divisions and all persons and entities in active concert or participation therewith from:

1.   using either the "EML", "EMLab", "ENVIRONMENTAL MICROBIOLOGY LABORATORY", "EMLAB ENVIRONMENTAL MICROBIOLOGY

LABORATORY", or "ENVIRONMENTAL MICROBIOLOGY LABORATORIES" marks, as well as the marks depicted in United States Trademark/Service Mark Applications Serial Nos. 78/457,437, 78/721,307, 78/721,310, and 78/520,765 (the "Defendants' Marks"), or portions thereof, or any colorable imitative or confusingly similar designation or mark, either alone or in combination with other words, symbols, components, or the like, as a service mark, trademark, trade name component, internet domain name, or otherwise to market, advertise or identify Defendants' products or services in a manner which is likely to cause customer confusion between Defendants' and Plaintiff's products or services.

> 2.     otherwise infringing any of Plaintiff's EMSL, EMSL diamond design, or EMSL ANALYTICAL marks, including but not limited to, the mark depicted in United States Service Mark Registration No. 2,199,503, as well as related names and marks or portions thereof, or any colorable imitative or confusingly similar designations or marks, either alone or in combination with other words, symbols, components, or the like (the "EMSL Marks");

> 3.     unfairly competing with Plaintiff in any manner whatsoever;

> 4.     causing likelihood of confusion, injury to business reputation, or dilution of the distinctiveness of Plaintiff's EMSL Marks, products, services, or forms of advertisements;

B.     Ordering Defendants to deliver up for destruction, within five (5) days of the date of the entry of an Order for permanent injunction, all articles, displays, advertisements, packaging, brochures, catalogues, or any other material in their possession or control or in the possession or control of their agents and all those in active concert or participation with Defendants, which bear Defendants' Marks, or relate to imitative marks, designations, and colorable imitations thereof or those confusingly similar to Plaintiff's EMSL Marks;

C.     Ordering Defendants to forever abandon all of Defendants' Federal and State Trademark and Service Mark Registrations and Applications for Registration, including but not limited to, United States Trademark and/or Service Mark Applications, Serial Nos. 78/457,437, 78/721,307, 78/721,310, and 78/520,765, and any other trademark application or registration claiming rights with respect to the Defendants' Marks.

D.     Ordering Defendants to immediately file papers with all necessary governmental authorities formally changing their corporate names to names that do not include Defendants' Marks or any variant thereof, and to thereof take all necessary steps to complete said corporate name change in expeditious fashion;

E.     Awarding Plaintiff all: (i) Defendants' gains, profits, and advantages derived from Defendants' unlawful acts complained herein; (ii) damages sustained by Plaintiff; and (iii) costs of this action;

F.     Awarding Plaintiff interest;

G.     Awarding Plaintiff its reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a);

H.     Ordering Defendants to compensate Plaintiff for the advertising or other expenses necessary to dispel any confusion caused by the Defendants' infringement, unfair competition, or other unlawful acts;

I.     Ordering Defendants, its officers, agents, servants, employees, attorneys, subsidiaries, divisions and all persons and entities in active concert or participation therewith be enjoined and restrained from using, maintaining, or transferring to any third party, the Defendants' Marks, or any other mark which consists, in whole or in part, of any of Defendants' Marks or which is confusingly similar to or dilutive of Plaintiff's EMSL Marks;

J.      Ordering the transfer from Defendant to Plaintiff of all of Defendants' Marks, and further ordering Defendants to execute all documents and to take all actions necessary to effectuate such transfers;

K.      Ordering the transfer from Defendant to Plaintiff of all of Defendants' internet domain names which include all or a portion of Defendants' Marks, and/or are otherwise confusingly similar to Plaintiff's Marks, including but not limited to www.emlab.com, and further ordering Defendants to execute all documents and to take all actions necessary to effectuate such transfers;

L.      Ordering Defendants to file with this Court and serve on Plaintiff within thirty (30) days after entry of a permanent injunction order a report in writing under oath setting forth in detail the manner and form in which they have complied with the injunction;

M.      Ordering Defendants to post and prominently display signs for ninety (90) consecutive days in each of its places of business and on its internet websites, including but not limited to www.emlab.com and www.testamericainc.com, in which their products and services are advertised and/or sold indicating that Defendants do not carry, sell or provide any products or services manufactured, sold or provided by, and are otherwise not affiliated with, Plaintiff;

N.      Ordering Defendants to pay to Plaintiff a sum equal to three (3) times the amount of Plaintiff's actual damages because of the deliberate and willful nature of its acts; and

O.   Granting such other or further relief as this Court deems equitable and just.

Respectfully submitted,

*Francis P. Maneri*

Francis P. Maneri (FM-9515)
James J. Rodgers
John W. Goldschmidt, Jr.
Kathleen J. Seligman (KS-2405)
DILWORTH PAXSON LLP
LibertyView
457 Haddonfield Road, Suite 700
Cherry Hill, New Jersey  08002
(856) 663-8877
Attorneys for Plaintiffs